**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NOE GARCIA and ANIBAL GARCIA, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| **1720 FOOD CORP., A.M.I.S. FOOD L.L.C., NAHRED SUPERMARKETS, INC., ALI DARHAN and MOHAMMED DARHAN, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiffs Noe Garcia and Anibal Garcia (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief and the investigation of their counsel as to other matters, allege as follows:

## INTRODUCTION

1.     Plaintiffs worked as stock employees at two (2) of Defendants' Key Food Supermarkets located in Brooklyn, New York. Plaintiffs typically worked for Defendants well in excess of forty (40) hours each week yet were improperly paid on a purported "salary" basis and had hours "shaved" by Defendants when they punched in or punched out late.  As such, Plaintiffs were not paid for all hours worked, let alone overtime premiums for hours worked over forty (40) in a given workweek. Plaintiffs also did not receive wage notices and wage statements.

2.     Plaintiffs bring this action to recover unpaid overtime compensation owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23") class of all stock employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.      Plaintiff Noe Garcia ("N.Garcia") has been, at all relevant times, an adult individual residing in Kings County, New York.

8.      Plaintiff Anibal Garcia ("A. Garcia") has been, at all relevant times, an adult individual residing in Kings County, New York.

9.      Throughout the relevant time period, Plaintiffs performed work for Defendants at their Key Food Supermarkets located at 1720 Atlantic Avenue, Brooklyn, New York 11213 and 651 Nostrand Avenue, Brooklyn, NY 11216, respectively.

10.      Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

11.      Upon information and belief, 1720 Food Corp. (the "Atlantic Key Food") is an active New York Corporation with its principal place of business at 1720 Atlantic Avenue, Brooklyn, New York 11213.

12.      Upon information and belief, A.M.I.S. Food L.L.C. (the "Nostrand Key Food") is an active New York Limited Liability Company with its principal place of business at 651 Nostrand Avenue, Brooklyn, New York 11216.

13.      Upon information and belief, Nahred Supermarkets, Inc. (the "Merrick Key Food" and, collectively with the Atlantic Key Food and the Nostrand Key Food, "Key Food Supermarkets" or the "Corporate Defendants") is an active New York Corporation with its

principal place of business at 225-01 Merrick Boulevard, Laurelton, New York, 11413.

14.     The Corporate Defendants listed in paragraphs 11 through 13 operate together as a single business enterprise (hereinafter referred to as the "Key Food Enterprise").

15.     At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

16.     The Corporate Defendants' operations are interrelated and unified.

17.     Defendant Ali Darhan ("A. Darhan") is an owner and operator of the Corporate Defendants.

18.     Defendant Mohammed Darhan ("M. Darhan" and, collectively with A. Darhan, the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants.

19.     Upon information and belief, the Individual Defendants set the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

20.     The Individual Defendants participate in the day-to-day operations of the Corporate Defendants and act intentionally in his direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

21.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members

within the meaning of the FLSA.

22.     Upon information and belief, the Employees are freely interchangeable, the various business operations are marketed as one entity, the Individual Defendants are constantly present inside all of the supermarkets, the Defendants engage in the same wage and hour practices and policies, and all employees are paid by the same payroll methods.

23.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

24.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## COLLECTIVE ACTION ALLEGATIONS

25.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since September 18, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as stock employees (the "Collective Action Members").

26.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week and failure to pay for all overtime hours due to improper shaving of hours.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required overtime compensation for all hours worked in excess of forty (40) hours per week.

27.     Plaintiffs and the Collective Action Members have substantially similar job duties, and are paid pursuant to a similar, if not the same, payment structure.

<u>**CLASS ACTION ALLEGATIONS**</u>

28.     Pursuant to the NYLL, Plaintiffs brings their Second through Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

>       All persons employed by Defendants in New York at any time since September 18, 2009 and through the entry of judgment in this case (the "Class Period") who worked as stock employees (the "Class Members").

29.     <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

30.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

31.     Upon information and belief, there are in excess of forty (40) Class Members.

32.     <u>Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members.</u> Such common questions will determine Defendants' liability to all (or nearly all) Class Members. Common questions include:

a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.  whether Defendants "shaved" Plaintiffs' and the Class Members' hours when they clocked in late or clocked out early;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

e.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

f.   whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.   whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

33.   The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

34.   Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are stock employees of Defendants who worked for Defendants pursuant to their corporate policies.   Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, not paid for all hours worked, not paid for spread-of-hours premiums when working did not receive proper wage statements and wage notices.   If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.   Plaintiffs and their Counsel will fairly and adequately represent the Class. There

are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

36.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Supermarkets**

38.     At all relevant times, Defendants have been in the supermarket business. Upon information and belief, Defendants A. Dahran and M. Dahran, have owned, operated, and managed the supermarkets which comprise the Key Food Enterprise.

39.     According to Key Food's website, Defendants' Atlantic Key Food and Nostrand Key Food are both open Monday through Saturday from 8:00 am until 9:00 pm and Sunday from 8:00 am until 8:00 pm; and Defendants' Merrick Key Food is open Monday through Saturday from 7:00 am until 9:00 pm and Sundays from 7:00 am until 7:00 pm. (See www.keyfood.com).

40.     Throughout the relevant time period, Defendants A. Dahran and M. Dahran have been constant presences at the Key Food Supermarkets and have taken active roles in ensuring that the supermarkets run in accordance with their procedures and policies.

41.     Plaintiffs were generally supervised by Defendants' managers at the supermarkets yet Plaintiffs frequently observed that their managers received direct orders from A. Dahran and M. Dahran.

42.     Upon information and belief, Defendants employ their staff interchangeably in all of their various divisions of the Key Food Enterprise, including all three (3) Key Food Supermarket locations discussed herein.

**Plaintiffs' Work for Defendants**

43.     Plaintiff N. Garcia initially worked for Defendants as a dairy stock employee at the Nostrand Key Food for approximately one (1) year, in or around 2010, and returned to work for Defendants from in or around April 2013 through on or about July 10, 2015, as a dairy and grocery stock employee at the Atlantic Key Food (the "N. Garcia Employment Period").

44.     Throughout the N. Garcia Employment Period, Plaintiff was typically scheduled to work approximately six (6) days per week, from approximately 8:00 am through approximately 6:00 pm, for a total of between approximately fifty-four and fifty-seven (54-57) hours per week.

45.     Plaintiff A. Garcia worked for Defendants as a grocery and dairy stock employee at Defendants' Key Food Supermarkets form in or around 2010 through in or around April 2013 (the "A. Garcia Employment Period"). From the beginning of the A. Garcia Employment Period until in or around 2012, Plaintiff worked at the Nostrand Key Food. Thereafter, until in or around the end of the A. Garcia Employment Period, Plaintiff worked at the Atlantic Key Food.

46.     Throughout the A. Garcia Employment Period, Plaintiff was typically scheduled to work approximately six (6) days per week, from approximately 8:00 am through approximately between 7:00 pm and 8:00 pm, for a total of between approximately sixty and

sixty-three (60-63) hours per week.

47.    Throughout their respective employment periods, for their work, Plaintiffs were similarly paid on a purported "salary" basis with certain deductions, regardless of the specific duties they performed.

48.    During the time when N. Garcia worked at the Nostrand Key Food, N. Garcia was paid approximately $500.00 per week entirely in cash. During approximately the first year of Plaintiff N. Garcia's employment at the Atlantic Key Food, N. Garcia was paid approximately $575.00 per week through a combination of check and cash. Thereafter, until the end of the N. Garcia Employment Period, N. Garcia was paid approximately $625.00 per week through a combination of check and cash.

49.    Throughout the entirety of the A. Garcia Employment Period, A. Garcia was paid approximately $500.00 per week through a combination of check and cash.

50.    As a result of Defendants' policy of paying Plaintiffs on a purported "salary" basis, Plaintiffs were not paid overtime premiums when they worked more than forty (40) hours per week.

51.    Throughout the relevant time period, Plaintiffs tracked the numbers of hours worked by punching in and punching out on a time clock system. However, they typically observed on numerous occasions that the time clock "shaved" their hours worked down to between approximately fifteen (15) minutes and one (1) hour when they clocked in only minutes late or clocked out early. As such, in addition to the unpaid overtime premiums, Plaintiffs did not get paid for all hours worked due to Defendants "time shaving" policy.

52.    During their respective employment periods, when Plaintiffs worked fewer than their required hours, Defendants deducted money from their salary on a pro-rated hourly basis.

Accordingly, Defendants, in effect, treated Plaintiffs as "hourly" employees, rather than pay them an actual salary, yet they failed to pay Plaintiffs overtime premiums for hours worked over 40 each week.

53.     Plaintiffs have spoken with other stock employees of Defendants, including stock employees who worked at the Merrick Key Food, who were similarly required to work in excess of forty (40) hours per week during the Class Period and similarly did not receive overtime premium pay for hours worked over forty (40) per workweek.

54.     Plaintiffs have also spoken with other stock employees of Defendants, who were also subject to Defendants' "time shaving" policy and, therefore were not paid for all overtime hours worked.

55.     At no point during Plaintiffs' employment did they receive a wage notice showing his hourly or overtime rate at the date of his hiring or by February 1 of each year.  Also, Plaintiffs' were never provided a wage statement with the cash payment they received each week, indicating the amount of hours they worked during the week, their regular rate, and/or their overtime rate.

**<u>Defendants' Unlawful Corporate Policies</u>**

56.     Plaintiffs have spoken with other employees of Defendants, including employees who worked at the Merrick Key Food, who similarly worked in excess of forty (40) hours per week during the Class Period and did not receive overtime premiums of one-half their regular hourly rate for hours over forty (40) each week.  Defendants' failure to pay Plaintiffs and Class Members overtime premiums was a corporate policy of Defendants which applied to all of their stock employees throughout the relevant period.

57.     Plaintiffs have also spoken with other stock employees of Defendants, who were

also not paid for all overtime hours worked as a result of Defendants' "time shaving" policy. Defendants' failure to pay Plaintiffs and Class Members for all overtime hours worked at one and one-half their regular hourly rate was a corporate policy of Defendants which applied to all of their stock employees throughout the relevant period.

58.     Plaintiff and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay overtime compensation and spread of hours premiums.

59.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment. Upon information and belief, such individuals were not paid one and one-half when working in excess of forty (40) hours per week.  Additionally, such individuals were not provided with proper wage notices at hiring, by February 1 of each year, or on a weekly basis.

60.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees. Defendants failed to provide employees with proper wage statements each week and wage notice upon their hiring and/or on February 1 of each year and with accurate wage statements as required by NYLL § 195.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**

61.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

62.     By "shaving" Plaintiffs' hours and failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

63.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

64.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

65.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of

pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

67.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>**

68.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

70.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the

violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**<ins>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT</ins>**

71.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

72.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

73.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.      One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      September 18, 2015

**PELTON & ASSOCIATES PC**

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative collective and class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las normas laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de **Key Food Supermarket/1720 Food Corp.** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en como debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton & Associates PC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          7/17/15          _____
Firma                            Fecha              Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las normas laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de **Key Food Supermarket/1720 Food Corp.** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en como debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton & Associates PC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Aribel Garcia        8/10/15        Anibal Garcia
_____  _____      _____
Firma                Fecha          Nombre Escrito